BARNES et al. *v.* LADNER et al.

No. 41829        June 12, 1961        131 So. 2d 458

*Pyles & Tucker,* Jackson, for appellees.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

This case is before us on appeal by E. L. Barnes and others, petitioners, from a judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, sustaining a general demurrer to the appellants' petition asking that a writ of prohibition be issued restraining and prohibiting Heber Ladner, Secretary of State, from taking any steps or other proceedings in connection with the issuance of a proclamation certifying the results of the special election held on June 7, 1960, at which there was submitted to the qualified electors of the state for ratification or rejection the "right to work" amendment to the State Constitution,

as set forth in House Concurrent Resolution No. 43, adopted at the 1960 Regular Session of the Legislature.

The case is in a manner a companion suit with that of R. L. Barnes, et al. v. Ross R. Barnett, et al., No. 41,856, in which a decision was rendered by this Court on May 8, 1961, affirming a decree of the Chancery Court of Jackson County denying the prayer of the bill of complaint in that case for the issuance of an injunction to prevent the holding of the above mentioned election.

Several points alleged and argued by the appellants' attorneys as grounds for the issuance of the writ of prohibition in this case have been decided adversely to the appellants' contention in the opinion rendered by this Court in the above mentioned injunction suit; and those points will not be discussed by us in this opinion.

The record in this case shows that on April 28, 1960, the Legislature, by two-thirds majority vote of the Senate and the House of Representatives, enacted House Concurrent Resolution No. 43, which provided for the submission of the ''right-to-work'' constitutional amendment to the qualified electors of the state for ratification or rejection, at a special election to be held on the first Tuesday after the first Monday of June 1960. The amendment to be voted on was set forth in full in the resolution. The amendment provided for the amendment of Article 7 of the State Constitution by adding an additional section to said Article 7, to the numbered Section 198A, in order to guarantee that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in a labor union or labor organization. The Secretary of State caused notice of the election to be published on May 6, 1960, in the three daily newspapers published in the City of Jackson, Hinds County, Mississippi. The election was duly held on June 7, 1960, the date fixed for the holding of same, and on June 8, 1960, the petitioners filed their petition in this cause.

The petitioners alleged in their petition as grounds for restraining and prohibiting the Secretary of State from making and issuing his proclamation certifying the results of said election, the following:

(1) That said Concurrent Resolution No. 43 was not properly and legally adopted and passed by each branch of the Legislature, in that the House of Representatives, after said Resolution had been read and passed by a two-thirds vote of said House on three several days, disposed of a motion to reconsider the vote whereby said amendment had been passed, adversely, on the same day the third and last vote was taken, contrary to the provisions of Section 65 of the State Constitution.

(2) That the attempted adoption of Concurrent Resolution No. 43 was invalid for the reason that the senators and representatives, who composed the Legislature during the 1960 session, were not properly apportioned as required by Section 256 of the State Constitution.

(3) That said Concurrent Resolution No. 43 wholly failed to conform to Section 273 of the State Constitution, as amended, in that the said resolution wholly failed to direct the calling of an election.

(4) That the managers, clerks and administrative personnel used in conducting the Democratic Party Primary Election throughout the State on the first Tuesday after the first Monday of June 1960, the date on which the election on the constitutional amendment was held, were used in the conduct of the election on the constitutional amendment, in violation of the Constitution and laws of the State of Mississippi, thereby creating confusion and disorder in the matter of said election.

(5) That the Secretary of State failed to publish notice of said election at least thirty days preceding said election in each of the eighty-two counties, but merely gave notice by publication in three daily newspapers published in the City of Jackson on May 6, 1960; and that such

notice was not such notice as was required by said Section 273 of the State Constitution.

(6) That the Secretary of State caused to be printed on sample official ballots, which were mailed to the county election commissioners, showing said proposed constitutional amendment, certain instructions relative to the holding of said election, which said action of the Secretary of State in giving such instructions was quasi-judicial and beyond the scope of his authority.

(7) That the election commissioners of the several counties provided separate ballot boxes to be used in the election on the proposed constitutional amendment, separate and apart from the ballot boxes used in the election of said constitutional amendment; that said ballot boxes were cardboard boxes, with a hole cut in the top of each box, and were not secured with good and substantial locks, as required by Section 3249, Mississippi Code of 1942, as amended; that the use of such ballot boxes was unlawful; and that the attempted election on said constitutional amendment was for that reason invalid.

(8) That the State Board of Election Commissioners failed to comply with the requirements of Sections 3204 and 3205, Code of 1942, in the appointment of commissioners of election in each of the 82 counties, in that said Board failed to appoint persons of different political parties on the county election commission of each county.

The respondent Heber Ladner, Secretary of State, filed a general demurrer to the petition, alleging as grounds therefor the following: (1) That upon the facts alleged in said petition, the relators were attempting by the proceeding to contest the result of the election held on June 7, 1960, for the purpose of determining whether or not the proposed constitutional amendment should be rejected or ratified, and that the court had no jurisdiction to hear and determine such contest; (2) that, by the use of a writ of prohibition the petitioners were seeking to

restrain the respondent from doing the very acts and performing the specific duties imposed upon him by law; (3) that the relators, upon the facts alleged in their petition, had a plain and adequate remedy in the ordinary course of law without resorting to the extraordinary writ of prohibition; and (4) that upon the facts set forth in said petition the relators were not entitled to the relief prayed for, or to any relief whatsoever.

The Court, after a hearing, sustained the general demurrer and entered an order dismissing the petition. The petitioners thereupon requested an appeal with supersedeas. The appeal was granted, but without supersedeas.

The appellants have assigned and argued five points as grounds for reversal of the judgment of the lower court:

(1) That the manner of the enactment of House Concurrent Resolution No. 43 failed to comply with the requirements of Section 65 of the State Constitution.

(2) That the Secretary of State failed to give the required notice of the election on the proposed amendment.

(3) That "admitted illegalities" were committed in the conduct of the election on the proposed amendment.

(4) That the Legislature had no power to adopt House Concurrent Resolution No. 43, for the reason that there had been no reapportionment of membership of the Senate and House of Representatives as required by Section 256 of the State Constitution; and that by reason of the failure of the Legislature to provide for each reapportionment the petitioners were denied their substantive right to a republican form of government.

(5) That the constitutional amendment in question infringes the appellants' liberty to contract and to engage in concerted activities and their right to effective collective bargaining guaranteed by the Constitution and laws of the United States; and that the circuit court

erred in holding that the appellants had no substantial right in the premises to maintain said action for writ of prohibition.

■■ We think there is no merit in the appellants' contention that House Concurrent Resolution No. 43 is invalid for the alleged reason that the House of Representatives violated Section 65 of the State Constitution by tabling a motion to reconsider the vote whereby the Resolution was passed on the same day that the vote was taken by the House. Section 65 appears as a part of the "Rules of Procedure" contained in Article 4 of the Constitution, which is headed "Legislative Department"; and this Court has repeatedly held that the Legislature, as a coordinate department of the state government, is not subject to supervision and revision by the courts as to those rules of procedure prescribed by the Constitution for its observance. As stated by the Court in its opinion in Hunt v. Wright, 70 Miss. 298, 11 So. 608, "* * * while those rules are all *authoritative* and *mandatory* to legislators, who are sworn to note and observe them, they exhaust themselves upon legislators, and are not for the consideration of courts, which cannot explore legislative journals to see if all the directions of the Constitution were observed, but must accept as legislative enactments, duly passed as prescribed by the Constitution, all such acts as are duly authenticated as such in the mode prescribed by it." Mayor and Board of Aldermen of the City of Jackson v. State, 102 Miss. 663, 59 So. 873; State Ex rel. Collins, Attorney General, v. Jackson, 119 Miss. 727, 81 So. 1.

■■■ Points 2 and 4 of the appellants' assignment of errors have been decided adversely to the appellants' contention by the decision of this Court rendered on May 8, 1961, in Barnes v. Barnett, No. 41,856.

■■ We also think there is no merit in the appellants' contention that the election was invalid because of the "admitted illegalities" referred to by the appel-

lant in Point 3 above. The so-called "admitted illegalities" consist of (a) the alleged failure of the county election commissioners of the several counties to provide a sufficient number of ballot boxes "secured by good and substantial locks," as provided by Section 3249, Code of 1942, Rec., to be used in the holding of the special election on the constitutional amendment, and (b) the alleged failure of the State Election Commissioners to comply with the requirements of Code Section 3204 and 3205 in the appointment of election commissioners in each of the 82 counties. The irregularities complained of, even if proved, were not such irregularities as would have invalidated the election.

It is true that Section 3249, Mississippi Code of 1942, Rec., provides that, "The commissioners of election in each county shall procure, if not already provided, a sufficient number of ballot boxes, which shall be distributed by them to the election districts of the county before the time for opening the polls," and that the boxes shall be secured "by good and substantial locks." But Code Section 3250, immediately following, provides that, "The failure to distribute to the different voting places * * * the ballot boxes provided for, shall not prevent the holding of an election, but in such case the managers shall proceed to hold the election without the * * * ballot boxes, and shall provide some suitable substitute for the ballot boxes, and conform as nearly as possible to the law in the reception and disposition of the official ballots."

As to the appellants' complaint that the State Board of Election Commissioners failed to comply with the requirements of Section 3204 and Section 3205, Code of 1942, Rec., in the appointment of the county election commissioners, the only statement that we need to make in answer to the appellants' argument on that point is, that this is not a quo warranto proceeding to determine the validity of the appointments of the county election

commissioners in the 82 counties. The county election commissioners are not named in this proceeding. We have no way of knowing whether the appointments were valid or not. ▆▆ ▆ But they were de facto officers; and the rule is well settled that the acts of a de facto officer are valid. The official acts of any person in possession of a public office, and exercising the functions thereof, in regard to all persons interested or affected thereby, are valid, whether such person be lawfully entitled to hold office or not. Section 4045, Code of 1942, Rec. ▆▆▆ The official acts of the county election commissioners who were in possession of the offices and exercised the functions thereof in the matter of the holding of the election in this case were valid, and the alleged invalidity of their appointment, if proved, would have no bearing upon the validity of the election. 43 Am. Jur., Public Offices, Sec. 481, p. 233, and cases cited. See also Ray v. Murdock, 36 Miss. 692; City of Vicksburg v. Lombard, 51 Miss. 111; Town of Sumrall v. Polk, 118 Miss. 687, 79 So. 847; Miller v. Batson, 160 Miss. 642, 134 So. 567.

▆▆ ▆ It is next argued by the appellants' attorneys that the constitutional amendment in question infringes the appellants' liberty to contract and to engage in concerted activties and their right to effective collective bargaining guaranteed by the Constitution and Laws of the United States. But in making that argument the petitioners seek to have the court render an advanced opinion as to the validity of a constitutional amendment before that amendment has been enforced in a way to effect the substantial property rights of anyone; and this we cannot do. As stated by the Court in Power, Secretary of State, v. Ratliff, 112 Miss. 88, 72 So. 864, "There is no law authorizing a bill of complaint to remove an alleged cloud on or uncertainty about a statute or constitutional amendment before the same has been put into

force and effect in a way to injure the parties complaining.''

For the reasons stated above, the appellants' petition for the writ of prohibition stated no grounds for relief; and in our opinion the petition stated no grounds for relief by prohibition for the additional reason that the petition sought to restrain the respondent from doing the very acts and performing the specific duties imposed upon him by law.

The duties of the Secretary of State relating to the receipt and tabulation of the election returns are specifically defined in Section 3280, Code of 1942, which provides as follows: ''The commissioners of election shall, within ten days after the election, transmit to the secretary of state, to be filed in his office, a statement of the whole number of votes given in their county for each candidate for any office at the election; * * * Constitutional amendments shall be voted for at the time fixed by the concurrent resolution. The election, whether held separately or with other elections, shall be conducted, in all respects, as required for elections generally. The returns shall be made by the election commissioners to the secretary of state and shall be tabulated by him and submitted to each branch of the legislature, at the session next ensuing.''

The duties of the Secretary of State relating to the issuance of his proclamation inserting the proposed amendment as a part of the Constitution are defined in Section 273 of the Constitution, as amended in 1959 (House Concurrent Resolution No. 2, Ch. 78, Laws of Extraordinary Session 1959), which provides as follows: ''* * * and if it shall appear that a majority of the qualified electors voting directly for or against the same shall have voted for the proposed change, alteration or amendment, then it shall be inserted as a part of the Constitution by proclamation of the secretary of state certify-

ing that it received the majority vote required by the Constitution * * *.''

■■ ■■ The writ of prohibition is one of the oldest of the common law writs. It was in use as early as the reign of Henry II, and was used by the Royal Court against the ecclesiastical judges. As its name imports, the writ is one which commands the person or tribunal to whom it is directed not to do something which, by the suggestion of the relator, the court is informed he is about to do. ■■ ■■ The writ is commonly defined, substantially, as one to prevent a tribunal possessing judicial or quasi-judicial powers from exercising jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in the matters of which it has cognizance. 42 Am. Jur., Prohibition, Sec. 2, p. 139.

In the early case of Clayton v. Heidelberg, 9 Smedes & M. 623 (1848), our own High Court of Errors and Appeals, in discussing the nature and purpose of the writ, said: ''The law in regard to the writ of prohibition is very plain. Its purpose is to restrain and prevent a court of peculiar, limited or inferior jurisdiction, from taking judicial cognizance of cases not within its jurisdiction. It is founded upon a suggestion that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction. 3 Bl. Com. 112. Beyond these two grounds, a superior court will not interfere. When the matter is within the general jurisdiction of the court below, and in the conduct of the trial they have not exceeded their authority, the court above will not, on an application for a prohibition, inquire whether they have decided right or not. Grant v. Gould, 2 H. B. 100; Washburn v. Phillips, 2 Met. (Mass.), 296; People v. Seward, 7 Wend. 518.''

In State Ex rel. Attorney General v. Board of Supervisors of Coahoma County (1887), 91 Miss. 582, 3 So. 143, the Court held that a writ of mandamus and prohibition would not be allowed for the purpose of inquiring

into the qualifications of electors, or the legality of an election, as affected by matters not apparent on the face of the returns. In its opinion in that case, Judge Campbell said: "It may be that, as no provision was made by the Legislature for contesting the election, it cannot be done; but, whatever may be true as to this, we are sure that whatever may be the law in this state as to the writ of prohibition, and even if it be true that now mandamus and prohibition are coexistent and concurrent remedies, the one applicable whenever the other is, it is not allowable in such proceeding to inquire into the qualifications of electors, and the legality of the election, as affected by matters not apparent on the face of the returns."

In Gibbs v. McIntosh, 78 Miss. 648, 29 So. 465, the Court said: "It is not the policy of this state to have elections, and other political matters of government reserved to legislative discretion, interfered with by the judges and officers of the judicial department of the government."

In the more recent case of Holmes et al. v. Board of Supervisors of Forrest County, et al., 199 Miss. 363, 24 So. 2d 867, the Court said: "The writ of prohibition is extraordinary and remedial and may issue only from a court of original jurisdiction and lies only to control an inferior court or tribunal in the attempted exercise of judicial powers in excess of its jurisdiction. * * * The writ here is not sought to restrain either the board nor (sic) the sheriff from any judicial action * * *."

In the case of Cartledge v. City Council of Augusta (1939), 189 Ga. 267, 5 S. E. 2d 661, the Court held that where the General Assembly in providing for the submission of a proposed constitutional amendment conferred no power on the courts to determine any contest of the election, the courts were without power to order any recount of votes cast in counties in which fraud was charged. The Court in its opinion in that case said:

"In the instant case, the Secretary of State having canvassed the returns of the election, ascertained the result and certified the same to the Governor, his certificate showing that a majority voted in favor of ratifying the same, and the Governor having issued his proclamation in accordance therewith, the courts are not permitted to go behind the same. The Legislature had the right to clothe the Secretary of State with the power to determine the result; they have done so; that official has acted; and the amendment must be given effect as a part of our Constitution."

█ █ It is true that the Secretary of State under our statutes has multiple duties to perform and is vested with quasi-judicial powers under some statutes; but his functions in receiving and tabulating the election returns sent in by the election commissioners of the 82 counties, and in issuing his proclamation certifying the result of the election on a proposed constitutional amendment are not in our opinion judicial or quasi-judicial; and the circuit court was without power in this case to restrain or prohibit the Secretary of State from performing the acts mandatorily required of him by Code Section 3280, and Section 273 of the State Constitution.

We think there was no error in the action of the trial judge in sustaining the general demurrer to the petition for the writ of prohibition, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Lee, P.J.,* and *Arrington, Ethridge* and *Rodgers, JJ.,* concur.